UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF GS MORTGAGE SECURITIES CORPORATION III COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2011-GC3,<br><br>                              Plaintiff,<br><br>              -against-<br><br><br>GTA REALTY II, LLC, NANCY LAUNI and ROCCO LAUNI,<br>                              Defendants. | Case:  14-CV-3508 (TPG) (MHD) |

## <u>ORDER APPOINTING RECEIVER</u>

On reading and filing the annexed Memorandum of Law in Support of Plaintiff's Motion for the Appointment of a Receiver, signed and filed on June 4, 2014, the Declaration of Harvey Lederman, sworn to on June 3, 2014, the Declaration of Jason A. Nagi Supporting Expedited Relief to Appoint a Receiver, date June 3, 2014, and upon the exhibits annexed thereto, and upon the Verified Complaint filed in this matter, and upon the exhibits annexed thereto, and upon all other papers and proceedings already had herein, and it appearing to the satisfaction of this Court that this action is brought to foreclose a mortgage on a parcel of real estate in the County of New York from which it appears that the Plaintiff U.S. Bank National Association, as Trustee for the Registered Shareholders of GS Mortgage Securities Corporation III Commercial Mortgage Pass-Through Certificates, Series 2011-GC3, a citizen of the state of Ohio ("**Plaintiff**" or "**Lender**"), is the owner and holder of a certain mortgage on the premises hereinafter described, and Defendant GTA Realty II, LLC (the "**Borrower**") is in default in the payment of obligations owed to Plaintiff, which obligations are secured by such mortgage, and that the within

proceeding has been instituted for foreclosure of said mortgage, and that said mortgage contains a clause authorizing the appointment of a Receiver for all rents and profits of said premises, without notice, in the event of foreclosure thereof.

NOW, on motion of Polsinelli PC, attorneys for the Plaintiff, it is

ORDERED, that GlassRatner Management & Realty Advisors, LLC ("**GlassRatner**") is hereby appointed to act as receiver (the "**Receiver**") with respect to all real property, improvements thereon, and personal property identified in the mortgage, a copy of which is attached hereto as **Exhibit A** (the "**Mortgage**"), which real property includes property located at 287 Bleecker Street, New York, New York 10014 and 184 Prince Street, New York, New York 10012 (all of the foregoing, collectively, the "**Property**"), and the Court further orders as follows:

(a) the Receiver is appointed to act and serve as receiver with respect to the income from the Property, whether now existing or hereafter collected, including any and all rights of Borrower in the Property, including any and all accounts, rights to payment, contract rights, chattel paper, documents, instruments, licenses, contracts, agreements and general intangibles relating to any of the Property, and further including income and profits derived from the operation of any business on the Property or attributable to services that occur or are provided on the Property or generated from the use and operation of the Property; and

(b) effective immediately, the Receiver shall take and have complete and exclusive control, possession and custody of the Property, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits, and all other forms of accounts, accounts receivable, payment rights, cash, and cash equivalents;

(c)      effective immediately, the Receiver shall take any and all actions the Receiver deems reasonable and appropriate to prevent waste to and to preserve, secure, manage, maintain and safeguard the Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order;

(d)      effective immediately, Borrower and all persons acting under its direction, including any current manager of the Property, shall deliver possession of the Property to the Receiver, without any right of offset or recoupment, including: (1) all keys; (2) all leases and communication and correspondence files relating thereto; (3) all security deposits, rent, prepaid rent, other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Property, and any accountings of any of the foregoing; (4) a current list of the occupants of the Property, including all data with respect to each occupant; (5) any and all accounts receivable and accounts payable reports; (6) any and all documents pertaining to any ongoing litigation; (7) any and all documents pertinent to any licenses maintained in connection with the Property, and all communications and correspondence pertinent thereto; (8) any and all documents pertinent to any agreements entered into in connection with the Property, and all communications and correspondence pertinent thereto; (9) any and all contracts in effect with respect to any of the Property, and all communications and correspondence pertinent thereto; (10) any and all contracts, bids or other materials relating to any contractor work at the Property; (11) any and all payroll records, employee files, applications and other materials relevant to those persons employed by or at the Property; and (12) all such other records pertaining to the management of the Property;

(e)      effective immediately, Borrower and all persons acting under its direction, including any manager of the Property, are enjoined from in any manner disturbing the

Receiver's possession of the Property or any other property that is the subject of the Court's order, and are prohibited and restrained from disposing of, dissipating, mishandling or misappropriating any of the Property or other such property, and are prohibited and restrained from collecting any rents or other sums due to any Borrower, all until further order of the Court;

(f)     the Receiver is immediately vested with (and Borrower and its respective agents, including the property manager, shall immediately deliver) the books and records with respect to the operation of the Property, including any and all information related to: (1) rent rolls and leases affecting the Property; (2) amounts paid by lessees and other obligors of Borrower; (3) liens, encumbrances and other interests against or affecting the Property; (4) property taxes owed by Borrower; (5) all types of insurance affecting the Property (which Borrower shall act to terminate or modify); (6) plans, specifications, surveys and drawings of the Property; (7) access codes to the Property and any units therein; (8) all operating statements of Borrower; (9) all maintenance manuals for any equipment located at the Property; and (10) all other aspects of the Property and the operation and management thereof;

(g)     the Receiver shall allow Plaintiff and its agents access to the Property at all reasonable times;

(h)     the Receiver is authorized to manage, operate, lease, engage a broker, and, with Lender's consent and further order of the Court, sell the Property;

(i)     the Receiver is authorized to retain, hire or discharge employees at the Property, without any liability to the Receiver;

(j)     the Receiver is authorized to make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property;

(k)      the Receiver is authorized to receive and collect any and all sums due and owing to Borrower, whether the same are now due or hereafter become due and owing, and to deposit such sums into an account in his/her own name (which sums shall not be commingled with any other funds) established and maintained by the Receiver;

(l)      the Receiver is authorized to continue any current insurance policies in place (which neither Borrower nor any person or entity acting through Borrower will terminate or diminish in any manner) and is authorized (but not obligated) to purchase further insurance relating to the Property as the Receiver deems appropriate, subject to approval from Plaintiff;

(m)      the Receiver is authorized to pay all current and past due real estate taxes, personal property taxes and any other taxes and assessments against any of the Property, but subject to approval from the Plaintiff or the Court in the event net operating income from the Property is not sufficient to pay such taxes and assessments at any given time;

(n)      the Receiver is not responsible for the preparation of any tax returns for Borrower;

(o)      the Receiver is authorized to: (1) negotiate and enter into any new leases, occupancy agreements and contracts, for up to one year, in the ordinary course of the business of the Property and other property; (2) modify existing leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (3) pay all utilities, expenses and other obligations secured by, or which may give rise to, liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including, with approval from Plaintiff, obligations incurred prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; (4) make repairs necessary to the maintenance

of the Property and other property, including but not limited to all repairs necessary to remediate any environmental conditions present at the Property, in order to preserve the Property and other property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs or remediation having a cost of $5000.00 without first obtaining approval from the Plaintiff; and (5) take all steps necessary to comply with all requirements, regulations and laws, including but not limited to environmental or health requirements, regulations and laws, applicable to the Property, and to deal with all regulatory authorities in connection with the same;

(p)     the Receiver is authorized to, in its discretion, institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the protection, maintenance and preservation of the Property, for the carrying out of the terms of any order of the Court affecting the Property, to collect rents and other amounts now or hereafter becoming due, to remove tenants or other persons or entities from the Property, and/or to defend against any action brought against the Receiver acting in such capacity;

(q)     the Receiver is authorized to enter into further lending transactions by which Plaintiff may advance monies to the Receiver (on a nonrecourse basis as to Receiver) in accordance with the terms of the Mortgage, to enable the Receiver to perform his/her duties hereunder, in which case any monies loaned shall be secured by a first and prior lien and security interest on the Property in favor of Plaintiff, pursuant to Plaintiff's existing Loan Documents (as such term is defined in Plaintiff's verified complaint);

(r)     the Receiver may apply income from the Property, subject to the lien rights of Plaintiff, as follows: (1) to the Receiver's approved fees and expenses; (2) to current operating

expenses of the receivership incurred by the Receiver in the ordinary course of business; and (3) to the obligations owed to Plaintiff under the Loan Documents or otherwise;

(s)        the Receiver is authorized to maintain sufficient cash on hand to enable the Receiver to meet expenses, in an amount to be agreed to between the Receiver and Plaintiff;

(t)        the Receiver is directed to file with the Court and serve on parties of record, within 45 days of entry of the order of the Court, and not less than quarterly thereafter, and within 30 days after termination of the receivership, full and complete reports, under oath, detailing receipts, disbursements and transactions affecting the Property;

(u)        the Receiver is directed to post a surety bond in the amount of $68,585.00, the cost of which shall be an expense of the receivership;

(v)        no person or entity may file suit against the Receiver, in his/her capacity as Receiver, unless otherwise authorized in advance by this Court;

(w)        the Receiver, and those agents and any property manager acting under his/her control, shall have no personal liability in connection with their conduct in the course of this receivership, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or failures to comply with the orders of this Court;

(x)        the Receiver is authorized to undertake all actions specifically set forth in this Order, as well as to exercise the usual and customary powers accorded to a receiver under New York law (except as otherwise limited by this Order or any subsequent order of the Court);

(y)        the Receiver may be removed upon an order of the Court, in which event the Court shall appoint a substitute receiver;

(z)     nothing contained in this Order shall be construed as obligating the Receiver to advance its own funds in order to pay the costs and expenses of the receivership that have been approved by the Plaintiff and the Court;

(aa)    the Receiver may apply at any time to the Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill its duties;

(bb)    the bond of the Receiver shall be canceled, and the Receiver discharged, upon the Court's approval of the Receiver's final accounting upon a motion made by Plaintiff with a copy of same served upon Borrower or its counsel;

(cc)    the entry of this Order shall not in any manner prejudice any of the other rights and remedies of Plaintiff under its Loan Documents and under applicable law;

(dd)    the entry of this Order shall not in any manner preclude any consensual resolution that may be reached between Plaintiff and Borrower, and the Receiver shall abide by the terms of any such consensual resolution;

(ee)    Receiver shall forthwith deposit all monies received by him/her at the time he/she receives same, in his/her own name as Receiver, in a reputable federally insured bank and no withdrawals will be made therefrom except as authorized in this Order;

(ff)    any action of the Receiver authorized in this Order shall require the consent of Plaintiff if and when such action, if undertaken by Defendant, would require Plaintiff consent or authorization under any Loan Document; and

(gg)    GlassRatner is qualified to act as Receiver in this matter; GlassRatner has active assignments at this time in both New York and New Jersey, and over the course of the past three years, has managed a total of 24 properties in those two states.  GlassRatner is experienced

8

managing mixed-use properties and both retail and multifamily properties, as well as office buildings.  GlassRatner manages properties across the nation, currently manages approximately 135 commercial properties, and currently acts as a court-appointed receiver with respect to 35 assets.  Over the past five years, GlassRatner has served as a court-appointed receiver in more than 210 cases.  In order to act as receiver with respect to the Property, GlassRatner is and shall be entitled to charge a start-up fee of $2500.00 and then charge a receivership / management fee equal to five percent (5.0%) of the Property's monthly gross income, which fees shall be the total compensation to be paid to the Receiver in this matter.

_____
The Honorable _____
United States District Court
Southern District of New York

48107095

# EXHIBIT A



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2011030300484005008EFBD0 |

## RECORDING AND ENDORSEMENT COVER PAGE — PAGE 1 OF 28

| | | |
|---|---|---|
| Document ID: 2011030300484005 | Document Date: 02-18-2011 | Preparation Date: 05-11-2011 |

Document Type: MORTGAGE AND CONSOLIDATION
Document Page Count: 26

| PRESENTER: | RETURN TO: |
|---|---|
| CHOICE ABSTRACT CORP (PICKUP KINGSLAND) AS AGENT FOR COMMONWEALTH 15 WEST 44TH STREET NEW YORK, NY 10036 212-391-0800 CAC NY 15722 A/B camille@choicefamily.com | CHOICE ABSTRACT CORP (PICKUP KINGSLAND) CASSIN & CASSIN LLP 2900 WESTCHESTER AVENUE, SUITE 404 PURCHASE, NY 10577 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 503 | 18 | Entire Lot | | 184 PRINCE STREET |
| | Property Type: COMMERCIAL REAL ESTATE | | | | |
| Borough | Block | Lot | | Unit | Address |
| MANHATTAN | 590 | 52 | Entire Lot | | 287 BLEECKER STREET |
| | Property Type: COMMERCIAL REAL ESTATE | | | | |

### CROSS REFERENCE DATA

CRFN: 2004000265528

x  Additional Cross References on Continuation Page

### PARTIES

| MORTGAGOR: | MORTGAGEE: |
|---|---|
| GTA REALTY II LLC 184 PRINCE STREET NEW YORK, NY 10012 | CITIGROUP GLOBAL MARKETS REALTY CORP 388 GREEWICH STREET, 19TH FLOOR NEW YORK, NY 10013 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 4,200,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 481,904.27 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,409.50 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 4,819.00 | | $ | 0.00 |
| Spec (Additional): | $ | 1,204.75 | RECORDED OR FILED IN THE OFFICE | | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| MTA: | $ | 1,445.70 | CITY OF NEW YORK | | |
| NYCTA: | $ | 3,649.10 | Recorded/Filed      05-16-2011 13:55 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 13,528.05 | 2011000175943 | | |
| Recording Fee: | $ | 169.00 | | | |
| Affidavit Fee: | $ | 8.00 | *Annetta M. Hill* | | |
| | | | **City Register Official Signature** | | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2011030300484005008CF950

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | **PAGE 2 OF 28** |
| --- | --- |

Document ID: **2011030300484005**      Document Date: 02-18-2011      Preparation Date: 05-11-2011
Document Type: MORTGAGE AND CONSOLIDATION

**CROSS REFERENCE DATA**
**CRFN:** 2009000340216
**CRFN:** 2010000347586
**CRFN:** 2007000326571
**CRFN:** 2009000345857

Loan No. 4369

GTA REALTY II LLC, as mortgagor

for the benefit of

CITIGROUP GLOBAL MARKETS REALTY CORP., as mortgagee

MORTGAGE AND AGREEMENT OF CONSOLIDATION AND MODIFICATION OF
MORTGAGE, SPREADER AND SECURITY AGREEMENT

Dated:      As of February 18, 2011

Location: 184 Prince Street
          New York, New York 10012 and
          287 Bleecker Street
          New York, New York 10014

Block:   503    590
Lot:     18     52

PREPARED BY AND UPON
RECORDATION RETURN TO:

Cassin & Cassin LLP
711 Third Avenue, 20th Floor
New York, New York 10017
Attn: Recording Department

CHOICE ABSTRACT CORP.
15 WEST 44th ST. - 7th FL
NEW YORK, NY 10036

CAC NY 15722AB

THIS MORTGAGE AND AGREEMENT OF CONSOLIDATION AND MODIFICATION OF MORTGAGE, SPREADER AND SECURITY AGREEMENT (this "Security Instrument") is made as of this 18th day of February, 2011, by GTA REALTY II LLC, a Delaware limited liability company, having its principal place of business at 184 Prince Street, New York, New York 10012, as mortgagor (together with its permitted successors and assigns, "Borrower") for the benefit of CITIGROUP GLOBAL MARKETS REALTY CORP., a New York corporation, having an address at 388 Greenwich Street, 19th Floor, New York, New York 10013 (together with its successors and assigns, "Lender"), as mortgagee. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement (defined below).

## RECITALS:

Borrower is the owner of the Property (defined below) and Lender is the owner and holder of certain mortgages encumbering the Property, which mortgages are more particularly described on Exhibit B attached hereto (hereinafter collectively referred to as the "Existing Mortgages"), and of the notes, bonds or other obligations secured thereby (hereinafter collectively referred to as the "Existing Notes").

There is now owing on the Existing Notes and the Existing Mortgages the unpaid principal sum of $3,718,095.73, together with interest thereon (the "Existing Indebtedness").

Borrower, by its Consolidated, Amended and Restated Promissory Note of even date herewith given to Lender, is indebted to Lender in the aggregate principal sum of $4,200,000.00 (the Consolidated, Amended and Restated Promissory Note, together with all modifications, substitutions and amendments thereof, shall collectively be referred to as the "Note"). The Note evidences a new indebtedness of $481,904.27 (the "New Indebtedness") together with the renewal, confirmation, extension, modification, amendment and restatement of the Existing Indebtedness of $3,718,095.73 evidenced by the Existing Notes secured by the Existing Mortgages, with interest from the date thereof at the rate set forth in the Note, principal and interest to be payable in accordance with the terms and conditions provided in the Note.

Borrower and Lender have agreed in the manner hereinafter set forth (i) that Lender will take by assignment the Existing Mortgages and the respective liens thereof, (ii) to spread the Existing Mortgages and the respective liens thereof over those portions of the Property (defined below) not already covered thereby, (iii) for Borrower to grant a lien upon the Property in the amount of the New Indebtedness, (iv) to consolidate and coordinate the respective liens of the Existing Mortgages and the lien created by this Security Instrument and (v) to modify the terms and provisions of the Existing Mortgages and the lien created by this Security Instrument.

Borrower desires to secure the payment of the Debt (as defined in that certain Loan Agreement dated as of the date hereof between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Loan Agreement") and the performance of all of Borrower's obligations under the Note, the Loan Agreement and the Loan Documents (as defined in the Loan Agreement);

1

Borrower desires to secure the payment of the outstanding principal amount set forth in, and evidenced by, the Loan Agreement and the Note together with all interest accrued and unpaid thereon and all other sums due to Lender in respect of the Loan under the Note, the Loan Agreement, this Security Instrument or any of the other Loan Documents (defined below) (collectively, the "**Debt**") and the performance of all of the obligations due under the Note, the Loan Agreement and all other documents, agreements and certificates executed and/or delivered in connection with the Loan (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, collectively, the "**Loan Documents**"); and

This Security Instrument is given pursuant to the Loan Agreement, and payment, fulfillment, and performance of the obligations due thereunder and under the other Loan Documents are secured hereby in accordance with the terms hereof.

NOW, THEREFORE, in pursuance of said agreement and in consideration of One Dollar ($1.00) and other valuable consideration, the parties hereto agree as follows:

A.      Assignment of Existing Mortgages.   The Existing Mortgages and the respective liens thereof have been assigned to Lender.

B.      Spreading of Existing Mortgages.   The Existing Mortgages and the respective liens thereof are hereby spread to cover those portions of the Property not already covered thereby.

C.      New Mortgage.   Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to and grant a security interest to Lender and its successors and assigns in the Property securing the New Indebtedness.

D.      Consolidation of Mortgages.   The liens of the Existing Mortgages as so assigned and spread, and the lien created by this Security Instrument under Section C above (the "**New Mortgage**") are hereby consolidated and coordinated so that together they shall hereafter constitute in law but one mortgage, a single lien, covering the Property and securing the principal sum of $4,200,000.00, together with interest thereon as hereafter provided.

E.      (1)      Borrower shall promptly cause this Security Instrument to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice and fully to protect the lien of the Security Instrument upon, and the interest of Lender in, the Property.   Borrower will pay all filing, registration and recording fees and all reasonable expenses incident to the preparation, execution and acknowledgment of this Security Instrument and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising from or in connection with the filing, registration, recording, execution and delivery of this Security Instrument and Borrower shall hold harmless and indemnify Lender against any liability incurred by reason of the imposition of any tax on the issuance, making, filing, registration or recording of this Security Instrument.

(2)      Borrower represents, warrants and covenants that there are no offsets, counterclaims or defenses against the Debt, this Security Instrument or the Note, that Borrower has full power, authority and legal right to execute this Security Instrument and to keep and

2

observe all of the terms and provisions of this Security Instrument on Borrower's part to be observed or performed and that the Note, and this Security Instrument constitute valid and binding obligations of Borrower.

(3)     This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against when the enforcement of any modification, amendment, waiver, extension, charge, discharge or termination is sought.

(4)     This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns.

(5)     This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which shall constitute a single agreement. The failure of any party hereto to execute this Security Instrument, or any counterpart thereof, shall not relieve the other signatories from their obligations hereunder.

(6)     If any term, covenant or condition of this Security Instrument shall be held to be invalid, illegal or unenforceable in any respect, this Security Instrument shall be construed without such provision.

(7)     This Security Instrument shall be governed by and construed in accordance with the laws of the State of New York and the applicable laws of the United States of America.

(8)     Except as otherwise provided to the contrary in the following numbered Sections, all defined terms in the following numbered Sections shall have the meaning given to such terms in the above provisions of this Security Instrument and all references to the "Note" shall refer to the Existing Notes as consolidated, amended and restated by the Note.

F.     Modification of Mortgage.  The terms, covenants and provisions of the Existing Mortgages and the New Mortgage above are hereby modified, amended and restated so that henceforth the terms, covenants and provisions of this Security Instrument below shall supersede the terms covenants and provisions of the Existing Mortgages and the New Mortgage shall read the same as the following Articles and Sections of this Security Instrument.  This Security Instrument as herein modified, amended, spread and restated, is hereby ratified and confirmed in all respects by Borrower.

## ARTICLE 1 - GRANTS OF SECURITY

Section 1.1.   PROPERTY MORTGAGED.   Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer, convey and grant a security interest to Lender and its successors and assigns in and to the following property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "Property"):

(a)     Land.  The real property described in Exhibit A attached hereto and made a part hereof (collectively, the "**Land**");

(b)     Additional Land.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument;

(c)     Improvements.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

(d)     Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements, and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, rights of dower, rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto;

(e)     Fixtures and Personal Property.  All machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), furniture, software used in or to operate any of the foregoing and other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Land and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Land and the Improvements (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), and all proceeds and products of the above;

(f)     Leases and Rents.  All leases, subleases, subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under any Creditors Rights Laws (collectively, the "**Leases**")

4

and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower or its agents or employees from any and all sources arising from or attributable to the Property, including, all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Borrower or Manager and proceeds, if any, from business interruption or other loss of income insurance whether paid or accruing before or after the filing by or against Borrower of any petition for relief under any Creditors Rights Laws (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(g)     <u>Insurance Proceeds</u>.  All insurance proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (collectively, the "**Insurance Proceeds**");

(h)     <u>Condemnation Awards</u>.  All condemnation awards, including interest thereon, which may heretofore and hereafter be made with respect to the Property by reason of any taking or condemnation, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property (collectively, the "**Awards**");

(i)     <u>Tax Certiorari</u>.  All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(j)     <u>Rights</u>.  The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(k)     <u>Agreements</u>.  All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(l)    Intangibles.  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(m)    Accounts.  All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including without limitation, the Accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof (collectively, the "**Accounts**");

(n)    Proceeds.  All proceeds of any of the foregoing items set forth in subsections (a) through (m) including, without limitation, Insurance Proceeds and Awards, into cash or liquidation claims; and

(o)    Other Rights.  Any and all other rights of Borrower in and to the items set forth in subsections (a) through (n) above.

Section 1.2.    ASSIGNMENT OF RENTS.  Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Loan Agreement and Section 8.1(h) of this Security Instrument, Lender grants to Borrower a revocable license to (i) collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums, and (ii) enforce the terms of the Leases.

Section 1.3.    SECURITY AGREEMENT.  This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Personal Property to the full extent that the Personal Property may be subject to the Uniform Commercial Code.

Section 1.4.    FIXTURE FILING.  Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

Section 1.5.    CONDITIONS TO GRANT.  TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender and its successors and assigns, forever; PROVIDED, HOWEVER, these presents are upon the express condition that, if Lender shall be well and truly paid the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Security Instrument, if Borrower shall well and truly perform the Other Obligations as set forth in this Security Instrument and shall well and truly abide by and comply

with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void.

## ARTICLE 2 - DEBT AND OBLIGATIONS SECURED

**Section 2.1.**   DEBT.   This Security Instrument and the grants, assignments and transfers made in Article 1 are given for the purpose of securing the Debt.

**Section 2.2.**   OTHER OBLIGATIONS.   This Security Instrument and the grants, assignments and transfers made in Article 1 are also given for the purpose of securing the performance of the following (the "**Other Obligations**"): (a) all other obligations of Borrower contained herein; (b) each obligation of Borrower contained in the Loan Agreement and any other Loan Document; and (c) each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

**Section 2.3.**   DEBT AND OTHER OBLIGATIONS.   Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations.**"

**Section 2.4.**   PAYMENT OF DEBT.   Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument.

**Section 2.5.**   INCORPORATION BY REFERENCE.   All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

## ARTICLE 3 - PROPERTY COVENANTS

Borrower covenants and agrees that:

**Section 3.1.**   INSURANCE.   Borrower shall obtain and maintain, or cause to be obtained and maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

**Section 3.2.**   TAXES AND OTHER CHARGES.   Borrower shall pay all real estate and personal property taxes, assessments, water rates or sewer rents (collectively "**Taxes**"), ground rents, maintenance charges, impositions (other than Taxes), and any other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Property (collectively, "**Other Charges**"), now or hereafter levied or assessed or imposed against the Property or any part thereof in accordance with the Loan Agreement.

**Section 3.3.**   LEASES.   Borrower shall not (and shall not permit any other applicable Person to) enter in any Leases for all or any portion of the Property unless in accordance with the provisions of the Loan Agreement.

**Section 3.4.** WARRANTY OF TITLE. Borrower has good, indefeasible, marketable and insurable title to the Property and has the right to mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey the same. Borrower possesses an unencumbered **fee simple absolute estate** in the Land and the Improvements except for the Permitted Encumbrances, such other liens as are permitted pursuant to the Loan Documents and the liens created by the Loan Documents. This Security Instrument, when properly recorded in the appropriate records, together with any Uniform Commercial Code financing statements required to be filed in connection therewith, will create (a) a valid, perfected first priority lien on the Property, subject only to Permitted Encumbrances and the liens created by the Loan Documents and (b) perfected security interests in and to, and perfected collateral assignments of, all personalty (including the Leases), all in accordance with the terms thereof, in each case subject only to any applicable Permitted Encumbrances, such other liens as are permitted pursuant to the Loan Documents and the liens created by the Loan Documents. Borrower shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Security Instrument and shall forever warrant and defend the same to Lender against the claims of all Persons whomsoever.

## ARTICLE 4 - FURTHER ASSURANCES

**Section 4.1.** COMPLIANCE WITH LOAN AGREEMENT. Borrower shall comply with all covenants set forth in the Loan Agreement relating to acts or other further assurances to be made on the part of Borrower in order to protect and perfect the lien or security interest hereof upon, and in the interest of Lender in, the Property.

**Section 4.2.** AUTHORIZATION TO FILE FINANCING STATEMENTS; POWER OF ATTORNEY. Borrower hereby authorizes Lender at any time and from time to time to file any initial financing statements, amendments thereto and continuation statements as authorized by applicable law, as applicable to all or part of the Personal Property and as necessary or required in connection herewith. For purposes of such filings, Borrower agrees to furnish any information requested by Lender promptly upon request by Lender. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto or continuation statements, if filed prior to the date of this Security Instrument. Borrower hereby irrevocably constitutes and appoints Lender and any officer or agent of Lender, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Borrower or in Borrower's own name to execute in Borrower's name any such documents and otherwise to carry out the purposes of this Section 4.2, to the extent that Borrower's authorization above is not sufficient and Borrower fails or refuses to promptly execute such documents. To the extent permitted by law, Borrower hereby ratifies all acts said attorneys-in-fact have lawfully done in the past or shall lawfully do or cause to be done in the future by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

## ARTICLE 5 - DUE ON SALE/ENCUMBRANCE

**Section 5.1.** NO SALE/ENCUMBRANCE. Except in accordance with the express terms and conditions contained in the Loan Agreement, Borrower shall not cause or permit a sale, conveyance, mortgage, grant, bargain, encumbrance, pledge, assignment, or grant of any options with respect to, or any other transfer or disposition (directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration or of

record) of a legal or beneficial interest in the Property or any part thereof, Borrower, any constituent owner or other holder of a direct or indirect equity interest in Borrower, any indemnitor or other guarantor of the Loan, any constituent owner or other holder of a direct or indirect equity interest in such indemnitor or guarantor, any manager or operating lessee of the Property that is affiliated with Borrower or any constituent owner or other holder of a direct or indirect equity interest in such manager or such operating lessee.

## ARTICLE 6 - PREPAYMENT; RELEASE OF PROPERTY

**Section 6.1.** PREPAYMENT. The Debt may not be prepaid in whole or in part except in strict accordance with the express terms and conditions of the Note and the Loan Agreement.

**Section 6.2.** RELEASE OF PROPERTY. Borrower shall not be entitled to a release of any portion of the Property from the lien of this Security Instrument except in accordance with terms and conditions of the Loan Agreement.

## ARTICLE 7 - DEFAULT

**Section 7.1.** EVENT OF DEFAULT. The term "**Event of Default**" as used in this Security Instrument shall have the meaning assigned to such term in the Loan Agreement.

## ARTICLE 8 - RIGHTS AND REMEDIES UPON DEFAULT

**Section 8.1.** REMEDIES. Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

      (a)    declare the entire unpaid Debt to be immediately due and payable;

      (b)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

      (c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

      (d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)      institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

(f)      recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)      apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor under the Loan or any other Person liable for the payment of the Debt;

(h)      the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)      apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document and/or the Accounts to the payment of the following items in any order in its sole discretion: (i) Taxes and Other Charges; (ii) insurance premiums; (iii) interest on the unpaid principal balance of the Note; (iv) amortization of the unpaid principal balance of the Note; (v) all other sums payable pursuant to the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, including without limitation advances made by Lender pursuant to the terms of this Security Instrument;

10

(j)     surrender the insurance policies maintained pursuant to the Loan Agreement, collect the unearned insurance premiums for such insurance policies and apply such sums as a credit on the Debt in such priority and proportion as Lender in its discretion shall deem proper, and in connection therewith, Borrower hereby appoints Lender as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Borrower to collect such insurance premiums;

(k)     apply the undisbursed balance of any deposit made by Borrower with Lender in connection with the restoration of the Property after a casualty thereto or condemnation thereof, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its discretion; and/or

(l)     pursue such other remedies as Lender may have under Applicable Law.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority. Notwithstanding the provisions of this Section to the contrary, if any Event of Default as described in Section 10.1(f) of the Loan Agreement shall occur, the entire unpaid Debt shall be automatically due and payable, without any further notice, demand or other action by Lender.

**Section 8.2.** APPLICATION OF PROCEEDS. The purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

**Section 8.3.** RIGHT TO CURE DEFAULTS. Upon the occurrence and during the continuance of any Event of Default, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make any payment or do any act required of Borrower hereunder in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 8.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at any default rate specified in the Loan Agreement, if any (the "**Default Rate**"), for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender. All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

**Section 8.4.**    ACTIONS AND PROCEEDINGS.  Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to protect its interest in the Property.

**Section 8.5.**    RECOVERY OF SUMS REQUIRED TO BE PAID.  Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

**Section 8.6.**    OTHER RIGHTS, ETC.  (a)  The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument.  Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan or to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in the value of the Property, for failure to maintain the insurance policies required to be maintained pursuant to the Loan Agreement, or for failure to determine whether insurance in force is adequate as to the amount of risks insured.  Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)  Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect.  Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument.  The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.  Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 8.7.**    RIGHT TO RELEASE ANY PORTION OF THE PROPERTY.  Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being

accountable for so doing to any other lienholder.  This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

**Section 8.8.**   RIGHT OF ENTRY.  Upon reasonable notice to Borrower, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.

**Section 8.9.**   BANKRUPTCY. (a) Upon the occurrence and during the continuance of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.If there shall be filed by or against Borrower a petition under the Bankruptcy Code and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease.  Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease.  If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

**Section 8.10.**   SUBROGATION.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of the Other Obligations.

### ARTICLE 9 - ENVIRONMENTAL HAZARDS

**Section 9.1.**   ENVIRONMENTAL COVENANTS.  Borrower has provided representations, warranties and covenants regarding environmental matters set forth in the Environmental Indemnity and Borrower shall comply with the aforesaid covenants regarding environmental matters.

### ARTICLE 10 - WAIVERS

**Section 10.1.**   MARSHALLING AND OTHER MATTERS.  Borrower hereby waives, to the extent permitted by law, the benefit of all Legal Requirements now or hereafter in force regarding appraisement, valuation, stay, extension, reinstatement and redemption and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any

interest therein.  Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all Persons to the extent permitted by Legal Requirements.

**Section 10.2.** WAIVER OF NOTICE.  Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Security Instrument or the Loan Agreement specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Borrower is not permitted by Legal Requirements to waive its right to receive notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

**Section 10.3.** INTENTIONALLY OMITTED.

**Section 10.4.** SOLE DISCRETION OF LENDER.  Whenever pursuant to this Security Instrument, Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide whether arrangements or terms are satisfactory or not satisfactory shall (except as is otherwise specifically herein provided) be in the sole (but reasonable) discretion of Lender and shall be final and conclusive.

**Section 10.5.** WAIVER OF TRIAL BY JURY.  BORROWER AND LENDER EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF LENDER AND BORROWER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER AND LENDER.

**Section 10.6.** WAIVER OF FORECLOSURE DEFENSE. Borrower hereby waives any defense Borrower might assert or have by reason of Lender's failure to make any tenant or lessee of the Property a party defendant in any foreclosure proceeding or action instituted by Lender.

## ARTICLE 11 - INTENTIONALLY OMITTED

## ARTICLE 12 - NOTICES

**Section 12.1.** NOTICES.  All notices or other written communications hereunder shall be delivered in accordance with the applicable terms and conditions of the Loan Agreement.

## ARTICLE 13 - APPLICABLE LAW

**Section 13.1.** GOVERNING LAW. This Security Instrument shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located and the applicable laws of the United States of America.

**Section 13.2.** PROVISIONS SUBJECT TO APPLICABLE LAW. All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

## ARTICLE 14 - DEFINITIONS

**Section 14.1.** GENERAL DEFINITIONS. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any of Lender's successors and assigns," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE 15 - MISCELLANEOUS PROVISIONS

**Section 15.1.** NO ORAL CHANGE. This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower, Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 15.2.** SUCCESSORS AND ASSIGNS. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

**Section 15.3.** INAPPLICABLE PROVISIONS. If any term, covenant or condition of the Loan Agreement, the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Security Instrument shall be construed without such provision.

**Section 15.4.** HEADINGS, ETC. The headings and captions of various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 15.5.** NUMBER AND GENDER. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 15.6.** ENTIRE AGREEMENT. This Security Instrument and the other Loan Documents contain the entire agreement of the parties hereto and thereto in respect of the transactions contemplated hereby and thereby, and all prior agreements among or between such parties, whether oral or written, are superseded by the terms of this Security Instrument and the other Loan Documents.

**Section 15.7.** LIMITATION ON LENDER'S RESPONSIBILITY. No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

### ARTICLE 16 - INTENTIONALLY OMITTED.

### ARTICLE 17 - INTENTIONALLY OMITTED.

### ARTICLE 18 - STATE-SPECIFIC PROVISIONS

**Section 18.1.** PRINCIPLES OF CONSTRUCTION. In the event of any inconsistencies between the terms and conditions of this Article 19 and the terms and conditions of this Security Instrument, the terms and conditions of this Article 19 shall control and be binding.

**Section 18.2.** TRUST FUND. Pursuant to Section 13 of the New York Lien Law, Borrower shall receive the advances secured hereby and shall hold the right to receive the advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply the advances first to the payment of the cost of any such improvement on the Property before using any part of the total of the same for any other purpose.

**Section 18.3.** COMMERCIAL PROPERTY. Borrower represents that this Security Instrument does not encumber real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having its own separate cooking facilities.

**Section 18.4.** INSURANCE. The provisions of subsection 4 of Section 254 of the New York Real Property Law covering the insurance of buildings against loss by fire shall not apply to this Security Instrument. In the event of any conflict, inconsistency or ambiguity between the provisions of Section 3.1 hereof and the provisions of subsection 4 of Section 254 of the New

16

York Real Property Law covering the insurance of buildings against loss by fire, the provisions of Section 3.1 shall control.

Section 18.5.   LEASES.  Lender shall have all of the rights against Tenants set forth in Section 291-f of the Real Property Law of New York.

Section 18.6.   STATUTORY CONSTRUCTION.  The clauses and covenants contained in this Security Instrument that are construed by Section 254 of the New York Real Property Law shall be construed as provided in Section 254.  The additional clauses and covenants contained in this Security Instrument shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 and shall not impair, modify, alter or defeat such rights, notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254.  The rights of Lender arising under the clauses and covenants contained in this Security Instrument shall be separate, distinct and cumulative and none of them shall be in exclusion of the others.  No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding.  In the event of any inconsistencies between the provisions of Section 254 and the provisions of this Security Instrument, the provisions of the Security Instrument shall prevail.

Section 18.7.   MAXIMUM PRINCIPAL AMOUNT SECURED.  Notwithstanding anything contained herein to the contrary, the maximum amount of principal indebtedness secured by this Security Instrument at the time of execution hereof or which under any contingency may become secured by this Security Instrument at any time hereafter is $4,200,000.00, of which $481,904.57 is new indebtedness and $3,718,095.43 is existing indebtedness, plus (a) taxes, charges or assessments which may be imposed by law upon the Property; (b) premiums on insurance policies covering the Property; and (c) expenses incurred in upholding the lien of this Security Instrument, including, but not limited to, (i) the expenses of any litigation to prosecute or defend the rights and lien created by this Security Instrument; (ii) any amount, cost or charges to which Lender becomes subrogated upon payment, whether under recognized principles of law or equity or under express statutory authority and (iii) interest at the Default Rate (or regular interest rate).

Section 18.8.   SALE OF MORTGAGED PROPERTY/NON-JUDICIAL FORECLOSURE.

(A)   If this Security Instrument is foreclosed, the Property, or any interest therein, may, at the discretion of Lender, be sold in one or more parcels or in several interests or portions and in any order or manner.

(B)   In addition to any other remedy available to Lender under Article 8 of this Security Instrument or otherwise, upon the occurrence and during the continuance of an Event of Default, to the extent permitted by applicable law, Lender shall have the right to utilize the proceedings set forth in Article 14 of the New York Real Property Actions and Proceedings Law and commence a non-judicial foreclosure by power of sale of this Security Instrument.

Section 18.9.   TRANSFER TAXES.

17

(a)     In the event of any sale or transfer of Borrower's interest in the Property, or any part thereof, including any sale or transfer by reason of foreclosure of this Security Instrument or any prior or subordinate mortgage or by deed in lieu of any such foreclosure, Borrower shall timely and duly complete, execute and deliver to Lender all forms and supporting documentation required by any taxing authority to estimate and fix any tax payable by reason of such sale or transfer or recording of the deed evidencing such sale or transfer, including any New York State and New York City Real Estate Transfer Tax (individually, a "**Transfer Tax**" and collectively, the "**Transfer Taxes**").

(b)     Borrower shall pay the Transfer Taxes that may hereafter become due and payable with respect to any sale or transfer of the property described in this Article, and in default of such payment, Lender may pay the same and the amount of such payment shall be added to the Debt secured hereby and, unless incurred in connection with a foreclosure of this Security Instrument or deed in lieu of such foreclosure, be secured by this Security Instrument.

(c)     In the event that Borrower fails to execute the same and such failure continues for more than ten (10) days after Lender requests Borrower to execute the same, Borrower hereby irrevocably constitutes and appoints Lender as its attorney-in-fact, coupled with an interest, to prepare and deliver any questionnaire, statement, affidavit or tax return in connection with any Transfer Tax applicable to any foreclosure or deed in lieu of foreclosure described in this Article.

(d)     Borrower shall indemnify and hold harmless Lender against (i) any and all liability incurred by Lender for the payment of any Transfer Tax with respect to any transfer of Borrower's interest in the Property, and (ii) any and all expenses reasonably incurred by Lender in connection therewith including, without limitation, interest, penalties and reasonable attorneys' fees.

(e)     The obligation to pay the taxes and indemnify Lender under this Article is a personal obligation of Borrower (excluding its members, partners, principals, shareholders, directors and officers), whether or not Borrower is personally obligated to pay the Debt secured by this Security Instrument, and shall be binding upon and enforceable against the distributees, successors and assigns of Borrower with the same force and effect as though each of them had personally executed and delivered this Security Instrument, notwithstanding any exculpation provision in favor of Borrower with respect to the payment of any other monetary obligations under this Security Instrument.

(f)     In the event that Borrower fails or refuses to pay a tax payable by Borrower with respect to a sale or transfer by reason of a foreclosure of this Security Instrument in accordance with this Article, the amount of the tax, any interest or penalty applicable thereto and any other amount payable pursuant to Borrower's obligation to indemnify Lender under this Article may, at the sole option of Lender, be paid as an expense of the sale out of the proceeds of the mortgage foreclosure sale.

(g)     The provisions of this Article shall survive any transfer and the delivery of the deed affecting such transfer. Nothing in this Article shall be deemed to grant to Borrower any greater rights to sell, assign or otherwise transfer the premises than are expressly provided in

this Security Instrument nor to deprive Lender of any right to refuse to consent to any transaction referred to in this Article.

Section 18.10.  MORTGAGE TAX OBLIGATION AND INDEMNIFICATION. Borrower shall pay when due, and as a condition to any advance of funds under the Loan Documents, all taxes, mortgage recording taxes, recording charges and other amounts payable in connection with this Security Instrument, the Note or the other Loan Documents.  Borrower shall, at its sole cost and expense, protect, defend, indemnify and release and hold harmless Lender for, from and against any and all losses, costs, expenses, liabilities, claims and obligations imposed upon or incurred by or asserted against Lender, and directly or indirectly arising out of or in any way relating to any tax, mortgage recording tax, recording charge or other amount due or payable on the making, recording, or advance of funds under this Security Instrument, the Note or the other Loan Documents.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, this Security Instrument has been executed by the undersigned as of the day and year first above written.

BORROWER:

GTA REALTY II LLC, a
Delaware limited liability company

By:     G.T.A. REALTY CORP., a
New York corporation,
Its sole member

By: _Nancy Launi_
Name:        Nancy Launi
Title:          President

STATE OF NEW YORK        )
                                                : ss.:
COUNTY OF   N.Y.          )

On the 20ᵗʰ day of January, in the year 2011, before me, the undersigned personally appeared NANCY LAUNI, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

JOHN V. BIVONA
Notary Public, State of New York
No. 31-4970258
Qualified in New York County
Commission Expires August 6, 20 14

SEAL

**LENDER:**

**CITIGROUP GLOBAL MARKETS REALTY CORP.**, a New York corporation

By: _____

Name:   Ana E. Rosu

Title:   Vice President

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

On the 19 day of January, in the year 2011, before me, the undersigned personally appeared **ANA E. ROSU**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Signature and Office of individual
taking acknowledgment

Nannette L. Edwards
Notary Public, State of New York
No. 01ED6158862
Qualified in Queens County
Commission Expires Jan. 08, 2015

SEAL

EXHIBIT A

LEGAL DESCRIPTION

PARCEL 1

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan of the City of New York, on the easterly side of Bleecker Street between Jones and Barrow Streets bounded and described according to a map or survey made by James E. Sarrell, C.S., dated, July 14, 1855 as follows:

BEGINNING at a point on the easterly side of Bleecker Street, distant 82 feet 4 inches southerly from the southeasterly corner of Bleecker and Barrow Streets;

RUNNING THENCE easterly along Lot No. 289 Bleecker Street and nearly parallel with Barrow Street, 75 feet;

THENCE southerly and parallel with Bleecker Street, 24 feet 7 inches to Lot No. 285 Bleecker Street;

THENCE westerly along same, 75 feet to the easterly side of Bleecker Street;

THENCE northerly along said side of Bleecker Street, 24 feet 6-1/2 inches to the point or place of BEGINNING.

PARCEL 2

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York, City of New York and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Prince Street, distant 50 feet easterly from the southeasterly corner of Prince and Sullivan Streets;

RUNNING THENCE easterly along the southerly side of Prince Street, 22 feet;

THENCE southerly at right angles to Prince Street and along the line of an alley formerly of the estate of Henry Hopper, 26 feet;

THENCE westerly parallel with Prince Street, and at right angles to the last mentioned line, 10 feet;

THENCE northerly, at right angles to the last mentioned line and parallel with Sullivan Street, 7 feet;

THENCE westerly at right angles to the last mentioned line and parallel to Prince Street, 12 feet;

THENCE northerly at right angles to the last mentioned line and parallel with Sullivan Street, and along the land of Jacob Romaine 19 feet to the point or place of BEGINNING.



**EXHIBIT B**

**SCHEDULE OF MORTGAGES**

1.   Mortgage and Security Agreement made by G.T.A. Realty Corp. to Emigrant Funding Corporation, in the principal amount of $900,000.00, dated December 17, 2003 and recorded on April 29, 2004 as CRFN# 2004000265528 in the office of the City Register, County of New York, State of New York (the "City Register"); and

Which mortgage was assigned by Assignment of Mortgage from Emigrant Funding Corporation to Summit Bleecker Lender LLC, dated October 8, 2010 and recorded on October 18, 2010 as CRFN# 2010000347580 in the City Register; and

2.   Mortgage and Security Agreement made by G.T.A. Realty Corp. to Brick Realty Capital LLC (50% interest) and Hooshang Sohayegh and Robert Farhadian (each as to a 25% interest), in the principal amount of $450,000.00, dated October 5, 2009 and recorded on October 19, 2009 as CRFN# 2009000340216 in the City Register; and

Which mortgage was assigned by Assignment of Mortgage from Brick Realty Capital LLC (50% interest) and Hooshang Sohayegh and Robert Farhadian (each as to a 25% interest) to Summit Bleecker Lender LLC, dated October 5, 2010 and recorded on October 18, 2010 as CRFN# 2010000347583 in the City Register; and

3.   Mortgage and Security Agreement made by G.T.A. Realty II, LLC to Summit Bleecker Lender LLC, in the principal amount of $1,020,425.26, dated October 7, 2010 and recorded on October 18, 2010 as CRFN# 2010000347586 in the City Register; and

Which above three (3) mortgages were consolidated by Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing made by and between G.T.A. Realty II, LLC and Summit Bleecker Lender LLC, dated as of October 7, 2010 and recorded on October 18, 2010 as CRFN# 2010000347587 in the City Register, to form a single lien in the amount of $2,200,000.00; and

Which mortgages, as consolidated, were further assigned by Assignment of Mortgage from Summit Bleecker Lender LLC to Citigroup Global Markets Realty Corp. dated February 18, 2011 and intended to be recorded in the City Register; and

4.   Mortgage made by Nancy Launi to Wilshire State Bank in the principal amount of $1,200,000.00, dated June 8, 2007 and recorded on June 25, 2007 as CRFN# 2007000326571 in the City Register; and

Which mortgage, was assigned by Assignment of Mortgage from Wilshire State Bank to Citigroup Global Markets Realty Corp. in the reduced principal amount of $1,143,095.73 dated February 18, 2011 and intended to be recorded in the City Register; and

5.      Mortgage made by Nancy Launi to Dominick Cavallaro in the principal amount of $375,000.00, dated March 19, 2008 and recorded on October 22, 2009 as CRFN# 2009000345857 in the City Register; and

Which mortgage, was assigned by Assignment of Mortgage from Dominick Cavallaro to Citigroup Global Markets Realty Corp. dated February 18, 2011 and intended to be recorded in the City Register.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2011030300484005008S3551

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2011030300484005   Document Date: 02-18-2011   Preparation Date: 05-11-2011
Document Type: MORTGAGE AND CONSOLIDATION

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count
4

255 MORTGAGE TAX EXEMPT AFFIDAVIT

Loan No. 4369

<u>255 AFFIDAVIT</u>

STATE OF NEW YORK    )
                          : ss.:
COUNTY OF NEW YORK )

        **NANCY LAUNI**, in her capacity as **PRESIDENT of G.T.A. REALTY CORP.**, a New York corporation, the Sole Member of **GTA REALTY II LLC**, a Delaware limited liability company ("**Mortgagor**"), being duly sworn, deposes and says that he/she is familiar with the following facts:

        1.     That the mortgages set forth on *COVERING PREMISES (BOTH)* SCHEDULE "A" hereto securing the aggregate principal amount of **$4,200,000.00** owned or held by **CITIGROUP GOLBAL MARKETS REALTY CORP.**, a New York corporation ("**Mortgagee**"), were duly recorded as set forth in SCHEDULE "A", and that all mortgage recording tax payable thereon has been paid. *AS SET FORTH HEREIN.*

        2.     That a Mortgage and Agreement of Consolidation and Modification of Mortgage and Security Agreement dated as of February 18, 2011, by and between Mortgagor and Mortgagee is being tendered herewith for recording in the Office of the City Register, County of New York, State of New York and that ~~no~~ mortgage ~~recording~~ tax is payable thereon, *IN THE AMOUNT OF $13,493.00 PAID SIMULTANEOUSLY HEREWITH, &*

        3.     That the Mortgage and Agreement of Consolidation and Modification of Mortgage and Security Agreement herewith submitted for recording does not create or secure any new or further indebtedness other than the principal indebtedness or obligation secured by, or which under any contingency may be secured by the mortgages described in Paragraph 1 hereof. *THERE HAVE BEEN NO RELOANS OR READVANCES*

        4.     That this affidavit is being made pursuant to Section 255 of the Tax Law of the State of New York for the purpose of claiming exemption from any additional tax on recording of the Mortgage and Agreement of Consolidation and Modification of Mortgage and Security Agreement being submitted herewith. *(ALONG W/ 13,528.05 IN MTG. TAX)*

[NO FURTHER TEXT ON THIS PAGE]

*& WHICH REFLECTS MORTGAGE TAX BEING PAID ON THE NEW MONEY OF $481,904.27 BEING SECURED.*

_____
NANCY LAUNI

Sworn to before me this
_20th_ day of January, 2011

_____
NOTARY PUBLIC

JOHN V. BIVONA
Notary Public, State of New York
No. 31-4970258
Qualified in New York County
Commission Expires August 6, 20 _14_

**SEAL**

5.   Mortgage made by Nancy Launi to Dominick ~~Caravalo~~ *CAVALLARO* in the principal amount of $375,000.00, dated March 19, 2008 and recorded on October 22, 2009 as CRFN# 2009000345857 in the City Register; and *MTG. TAX PAID $7687.50 AND*

Which mortgage, was assigned by Assignment of Mortgage from Dominick ~~Caravallo~~ *CAVALLARO* to Citigroup Global Markets Realty Corp. dated February 18, 2011 and intended to be recorded in the City Register; and *WHICH HAS AN OUTSTANDING PRINCIPAL BALANCE OF $375,000.*

6.   Mortgage and Agreement of Consolidation and Modification of Mortgage and Security *AND SPREADER* Agreement made by and between GTA Realty II LLC and Citigroup Global Markets Realty Corp., dated as of February 18, 2011 and intended to be recorded in the City Register, to form a single lien in the amount of $4,200,000.00. *WHICH SECURES NEW MONEY IN THE AMOUNT OF $481,904.57 AND A COMBINED OUTSTANDING PRINCIPAL BALANCE OF $3,718,095.43 OF THE MORTGAGES BEING ASSIGNED AS SET FORTH ABOVE.*

*MTGS. 4-5 COVER PREMISES KNOWN AS 184 PRINCE ST. N.Y., N.Y.*

*MTG. 6 + MTGS 1-5 ARE SPREAD TO COVER PREMISES KNOWN AS 287 BLEECKER ST., NY NY AND 184 PRINCE ST., NY NY*

## EXHIBIT "A"

### (Schedule of Mortgages)

1.   Mortgage and Security Agreement made by G.T.A. Realty Corp. to Emigrant Funding Corporation, in the principal amount of $900,000.00, dated December 17, 2003 and recorded on April 29, 2004 as CRFN# 2004000265528 in the office of the City Register, County of New York, State of New York (the "City Register"); and

*MTG. TAX PAID $ 24,750. — AND*

Which mortgage was assigned by Assignment of Mortgage from Emigrant Funding Corporation to Summit Bleecker Lender LLC, dated October 8, 2010 and recorded on October 18, 2010 as CRFN# 2010000347580 in the City Register; and

2.   Mortgage and Security Agreement made by G.T.A. Realty Corp. to Brick Realty Capital LLC (50% interest) and Hooshang Sohayegh and Robert Farhadian (each as to a 25% interest), in the principal amount of $450,000.00, dated October 5, 2009 and recorded on October 19, 2009 as CRFN# 2009000340216 in the City Register; and *MTG. TAX PAID $ 9225. — AND*

Which mortgage was assigned by Assignment of Mortgage from Brick Realty Capital LLC (50% interest) and Hooshang Sohayegh and Robert Farhadian (each as to a 25% interest) to Summit Bleecker Lender LLC, dated October 5, 2010 and recorded on October 18, 2010 as CRFN# 2010000347583 in the City Register; and

3.   Mortgage and Security Agreement made by G.T.A. Realty II, LLC to Summit Bleecker Lender LLC, in the principal amount of $1,020,425.26, dated October 7, 2010 and recorded on October 18, 2010 as CRFN# 2010000347586 in the City Register; and

*MTG. TAX PAID $ 28,571.20*

Which above three (3) mortgages were consolidated by Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing made by and between G.T.A. Realty II, LLC and Summit Bleecker Lender LLC, dated as of October 7, 2010 and recorded on October 18, 2010 as CRFN# 2010000347587 in the City Register, to form a single lien in the amount of $2,200,000.00; and *WHICH MTGS. COVERING PREMISES KNOWN AS 287 BLEECKER ST., N.Y., NY AND 1-3*

Which mortgages, as consolidated, were further assigned by Assignment of Mortgage from Summit Bleecker Lender LLC to Citigroup Global Markets Realty Corp. dated February 18, 2011 and intended to be recorded in the City Register; and *WHICH HAS AN OUTSTANDING PRINCIPAL BALANCE OF $ 2,200,000. — , AND*

4.   Mortgage made by Nancy Launi to Wilshire State Bank in the principal amount of $1,200,000.00, dated June 8, 2007 and recorded on June 25, 2007 as CRFN# 2007000326571 in the City Register; and

Which mortgage, was assigned by Assignment of Mortgage from Wilshire State Bank to Citigroup Global Markets Realty Corp. in the reduced principal amount of $1,143,095.73 dated February 18, 2011 and intended to be recorded in the City Register; and