UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF GS MORTGAGE SECURITIES CORPORATION III COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2011-GC3,<br><br>       Plaintiff,<br><br>    -against-<br><br><br>GTA REALTY II, LLC, NANCY LAUNI and ROCCO LAUNI,<br><br>       Defendants. | Case:  14-CV-3508 (TPG) (MHD) |


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION TO APPOINT A RECEIVER</u>**


POLSINELLI PC

Jason A. Nagi
900 Third Avenue, 21st Floor
New York, New York 10022
jnagi@polsinelli.com
(212) 644-2092

*Attorneys for Plaintiff
U.S. Bank National Association, as Trustee for the
Registered Holders of GS Mortgage Securities
Corporation III Commercial Mortgage Pass-
Through Certificates, Series 2011-GC3*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

PROCEDURAL HISTORY ....................................................................................................2

FACTS ....................................................................................................................................2

    The Loan.........................................................................................................................2
    The Property and Borrower's Default .............................................................................4
    Income from the Property................................................................................................6
    Borrower Agreed to Have a Receiver Appointed ...........................................................6

ARGUMENT...........................................................................................................................7

    Point I       LEGAL STANDARD FOR APPOINTING A RECEIVER...................................7
        A.  Federal Law Favors Appointing a Receiver....................................................7
        B.  Intersection of Federal and State Law Favors Appointing a Receiver ...........9
    Point II     THE UNDISPUTED FACTS SUPPORT APPOINTING A RECEIVER .............10

CONCLUSION.......................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Aetna Life Ins. Co. v. Avalon Orchards, Inc.*,
    505 N.Y.S.2d 216 (3d Dep't 1986) .................................................................................11

*Canada Life Assurance Co. v. LaPeter*,
    563 F.3d 837 (9th Cir. 2009) .......................................................................................8

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
    839 F.2d 93 (2d Cir. 1988) ..........................................................................................9

*D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc., et al.*,
    550 F. Supp. 2d 481 (S.D.N.Y. 2008) ................................................... 8, 9, 10, 11

*Federal Deposit Ins. Corp. v. Vernon Real Estate Invs., Ltd.*,
    798 F. Supp. 1009 (S.D.N.Y. 1992)...........................................................................9

*Fortress Credit Corp. v. Alarm One, Inc.*,
    511 F. Supp. 2d 367 (S.D.N.Y. 2007) .....................................................................10

*Gasco Corp. & Gordian Group of Hong Kong, Inc. v. Tosco Props. Ltd.*,
    653 N.Y.S.2d 687 (2d Dep't 1997) ...........................................................................11

*Prudential Ins. Co. of America v. Hilton Hotels Corp.*,
    No. 95 Civ. 5575, 1995 U.S. Dist. LEXIS 18900 (S.D.N.Y. Dec. 21, 1995)...........................8

*Ross v. Thomas*,
    Civ. No. 09 5631, 2011 WL 2207550 (S.D.N.Y. June 6, 2011)............................................8

*Ryan Beck & Co., Inc. v. Daly Holdings, Inc.*,
    No. 06 Civ. 5349, 2006 U.S. Dist. LEXIS 92001,
    2006 WL 3775964, at *2 (S.D.N.Y. Dec. 19, 2006).............................................................8

*Varsames v. Palazzo*,
    96 F. Supp. 2d 361 (S.D.N.Y. 2000).............................................................................8

**Statutes**

28 U.S.C. § 1746...........................................................................................................3

New York Real Property Actions and Proceedings Law § 1325(1) ..........................................10

New York Real Property Law § 254..................................................................................10, 11

Fed. R. Civ. P. 66..............................................................................................................7

Fed. R. Civ. P. 64..............................................................................................................8

## Other Authorities

12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983
     (1999) .......................................................................................................................8

U.S. Bank National Association, as Trustee for the Registered Holders of GS Mortgage Securities Corporation III Commercial Mortgage Pass-Through Certificates, Series 2011-GC3 (the "**Plaintiff**" or "**Lender**"), for its memorandum of law in support of a Plaintiff's Motion to Appoint a Receiver (the "**Motion**") states as follows:

## INTRODUCTION

Defendant GTA Realty II (the "**Borrower**") borrowed $4.2 million from Plaintiff's predecessor-in-interest.  The primary collateral for the loan is two buildings, one in SoHo—184 Prince Street, New York, New York, consisting of four residential units and one commercial, street level unit, and the other in the West Village—287 Bleecker Street, New York, New York, consisting of eight residential units and one commercial, street-level unit.  Based on the information most recently available to Lender, the rents collected each month from these buildings are more than sufficient to pay the monthly loan payments owed to Lender—and that takes into account the fact that one unit is used by Borrower's principals, rent-free.  Nonetheless, Borrower has been chronically late making its payments for more than two years now, having started making late payments in August 2011—just six months after the Loan originated.  Now, *Borrower has made only two of the last six loan payments due*, leaving arrears for the months of February, March, April and May 2014.  Thus, rents from the Property are apparently being diverted, as the monthly rental income totals $68,885,[1] which is more than twice the monthly loan payment of $32,786.31.

These defaults were entirely avoidable had Borrower not breached the cash management provisions set out in the Loan Documents.  This is a large, commercial real estate loan, and it is not uncommon in such loans for lenders and borrowers to agree to the implementation of a cash

---

[1] The monthly rent for 287 Bleecker is $45,485 and the monthly rent for 184 Prince Street is $23,400, according to a rent roll provided by Borrower as of July 2013.

1

management system where income from the collateral is deposited into a designated account, from which disbursements are then made to assure that the loan is paid and that critical expenses—such as real estate taxes and premiums for insurance for the property—are also paid. Such was the case here, but Borrower instead violated the cash management provisions (set out in more detail below) and has retained control of the cash entirely for itself.    The    two defaults referenced above alone warrant the appointment of a receiver, but there is more: Borrower's other defaults under the loan include its failure to timely provide financial information to Lender as agreed in the Loan Documents and Borrower's failure to remediate violations and make repairs to the Property.

As a result of Borrower's payment defaults and non-monetary defaults, a receiver should be appointed in accordance with the terms of the Loan Documents (defined below), the Real Property Law and the Real Property Actions and Proceedings Law, to manage this Property during the pendency of this litigation.

## PROCEDURAL HISTORY

On May 15, 2014, Plaintiff filed its Verified Complaint and commenced this commercial foreclosure action.  (Dkt. # 2.)

Borrower was served with a summons and the Verified Complaint on May 23, 2014. (Dkt. # 3.)

## FACTS

**The Loan**

On or about February 18, 2011, Borrower signed and delivered to Citigroup Global Markets Realty Corp. ("**Citigroup**") that certain Consolidated, Amended and Restated Promissory Note in the original principal amount of $4,200,000.00 (as at any time amended or

restated, the "**Note**").  (Verified Complaint (Dkt. # 2) ("**Compl.**") at ¶ 9 and Ex. A thereto.)[2]  The

Note evidences a $4,200,000.00 loan made by Citigroup to Borrower (the "**Loan**") that

consolidated and restated prior loans made by Citigroup to Borrower.  (*Id.*)

In connection with the Loan, Borrower and Citigroup entered into that certain Loan

Agreement, dated as of February 18, 2011, which sets forth the terms, rights and obligations of

the parties with regard to the Loan.  (Compl. at ¶ 10.)

In order to secure the amounts due and owing under the Note, Borrower signed and

delivered for the benefit of Citigroup that certain Mortgage and Agreement of Consolidation and

Modification of Mortgage, Spreader and Security Agreement, dated as of February 18, 2011 (the

"**Mortgage**"), which encumbers certain real property, improvements thereon, and personal

property, all as described in the Mortgage (collectively, the "**Property**") (*Id.* at ¶ 11 and Exs. B

and C thereto).  The Property includes the aforementioned properties on Prince and Bleecker

Streets.

The Mortgage was duly recorded in the Office of the City Register of the City of New

York, New York County, on May 16, 2011, as CRFN 2011000175943, and the New York

recording tax was duly paid thereon (Compl. at ¶ 12).

In connection with the Loan, Borrower signed and delivered to Citigroup that certain

Assignment of Leases and Rents, dated as of February 18, 2011 (the "**ALR**").  (*Id.* at ¶ 13.)  The

ALR was duly recorded in the Office of the City Register of the City of New York, New York

County, on May 16, 2011, as CRFN 2011000175944.  (*Id.* and Ex. D thereto.)

Pursuant to Section 9.1 of the Loan Agreement, Borrower agreed to establish a

"**Restricted Account**," into which Borrower was to deposit all rents and other income derived

---

[2] Pursuant to 28 U.S.C. § 1746, the Verified Complaint acts as an affidavit in support of this Motion.

from the Property.  (Compl. at ¶ 14.)  Pursuant to Section 9.1 of the Loan Agreement, the parties

executed that certain Lockbox-Deposit Account Control Agreement, dated as of February 18,

2011 (the "**Lockbox Agreement**"), under which the parties established the Restricted Account

and agreed that rents and other revenue derived from the Property would be deposited into the

Restricted Account (*Id.* and Ex. E thereto).   After delivery of the revenue into the Restricted

Account, the funds would then be transferred to Borrower's account until such time as there is a

"trigger event" (which includes an event of default under the Loan Documents), at which time

the funds would be disbursed in a specific order of priority (Ex. E to Compl. at § 4.03), i.e., first,

to ensure payment of taxes, second to ensure payment of insurance premiums, next to ensure

payment of the amounts owed under the Loan Documents, then to ensure the funding of reserves

established under the Loan Documents, next, to ensure the payment of operating expenses, and

last, only if there is no event of default, remaining income would be delivered to Borrower (*Id.* at

§ 9.3).

The Note, Mortgage, ALR, Lockbox Agreement, and all other documents evidencing,

securing or executed in connection with the Loan, together with all modifications thereto, are

sometimes referred to herein collectively as the "**Loan Documents**."

Lender is the current owner and holder of the Loan Documents.  (Compl. at ¶ 17.)

In connection with the Loan and this action, Lender acts by and through its special

servicer, Rialto Capital Advisors, LLC.  (*Id.* ¶ 18.)

**The Property and Borrower's Default**

Under the Loan Documents, Borrower agreed to make payments of debt service and other

amounts on a monthly basis during the term of the Loan, by the sixth day of each month.  (*Id.* ¶

19.)

Beginning in August 2011, Borrower repeatedly failed to make the required monthly payments in a timely manner, resulting in the accrual of default interest and late charges which Borrower has failed to pay. (*Id.* ¶ 21.)

Most recently, Borrower failed to make the required monthly payments as and when due for the months of February, March, April, and May 2014.    (*Id.* ¶ 20.)

As of May 6, 2014, Borrower owes $5,057,911.03, as follows:

(a)     As of April 30, 2014, principal in the amount of $4,056,148.66;

(b)     Interest accrued through May 5, 2014, in the amount of $80,176.54;

(c)     Interest at the per diem rate of $668.14 from May 6, 2014 and thereafter;

(d)     Default interest accrued through April 30, 2014, in the amount of $195,196.11;

(e)     Default interest at the per diem rate of $563.35 from May 1, 2014 and thereafter;

(f)     As of April 30, 2014, prepayment consideration in the amount of $726,389.72;

(g)     As of April 30, 2014, late fees in the amount of $17,413.16;

(h)     Any and all fees and costs, expenses, administrative fees, attorneys' fees, and costs incurred in connection with the issuance of third-party reports in connection with the Property.

(*Id.* at ¶ 32.)

Borrower has also failed to deposit revenue generated by the Property into the Restricted Account pursuant to the Lockbox Agreement, to timely provide Quarterly Reports and Annual Reports, or provide evidence that certain building code violations were cured (*Id.* at ¶ 23.)

On April 14, 2014, Lender sent written notice to Borrower and Guarantors of Borrower's defaults under the Loan Documents, and requested cure of such defaults (*Id.* ¶ 29 and Ex. G thereto.)

On April 29, 2014, Lender sent written notice to Borrower and Guarantors of Borrower's continuing default under the Loan Documents and informed Borrower and Guarantors of acceleration of the debt owed under the Note and the other Loan Documents (Compl. at ¶ 30 and Ex. H thereto.)

Borrower has not cured the defaults set forth in the April 14 and April 29 letters (*Id. ¶* 31.)

**Income from the Property**

According to a rent roll provided by the Borrower, as of July 2013, the monthly rent for 287 Bleecker is $45,485.  (Lederman Decl. at ¶¶ 3,4 and Ex. 1 thereto.)  The monthly rent for 184 Prince Street is $23,400, totaling $68,885 for the two properties.  (Lederman Decl. at ¶¶ 3, 5 and Ex. 1 thereto.)

The monthly income from rent is more than twice the monthly loan payment of $32,786.31.  (Lederman Decl. at ¶ 6.)

**Borrower Agreed to Have a Receiver Appointed**

Section 8.1 (g) of the Mortgage permits the holder of the Mortgage, in an action to foreclose, to have a Receiver of rents appointed *without notice*.  It states in pertinent part:

> Upon the occurrence and during the continuation of any Event of Default, Borrower agrees that Lender may take such actions, *without notice* or demand … including but not limited to, the following actions …
> …
>
> (g) apply for the appointment of a receiver … *without notice* and without regard for the adequacy of the security for the Debt and without regard to the solvency of Borrower….

(Compl. at ¶ 33 and Ex. B thereto at § 8.1, pp. 9-10) (emphasis added).

In addition, Section 3.1 of the ALR allows Plaintiff, through a receiver, following an event of default to take possession of the Property and to collect all rents of the Property.  It states in pertinent part:

> Upon or at any time after the occurrence of an Event of Default, the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and *Lender shall immediately be entitled to possession of all Rents* and sums due under any Lease

Guaranties, whether or not Lender enters upon or takes control of the Property. In addition, ***Lender may, at its option***, without waiving such Event of Default, without regard to the adequacy of the security for the Debt, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, ***or by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property***, … lease ***and operate the Property on such terms and for such period of time as Lender may deem proper*** and either with or without taking possession of the Property in its own name, demand, sue for ***or otherwise collect and receive all Rents*** and sums due under all Lease Guaranties, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as Lender may deem proper ***and may apply the Rents and sums received … in such order and proportion as Lender in its sole discretion may determine***….

(Compl. at ¶¶ 35-37 and Ex. D thereto at § 3.1, pp. 3-4) (emphasis added).   These provisions were agreed to as part of a multi-million dollar loan transaction.

## ARGUMENT

### Point I

### LEGAL STANDARD FOR APPOINTING A RECEIVER

#### A.     Federal Law Favors Appointing a Receiver

Federal law governs whether a federal court should appoint a receiver in a diversity action.  *See* Fed. R. Civ. P. 66 ("These rules govern an action in which appointment of a receiver is sought."); *Varsames v. Palazzo*, 96 F. Supp. 2d 361 (S.D.N.Y. 2000); *see also Prudential Ins. Co. of America v. Hilton Hotels Corp.*, No. 95 Civ. 5575, 1995 U.S. Dist. LEXIS 18900, at *1-2 (S.D.N.Y. Dec. 21, 1995); *see generally* 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1999).

New York district courts frequently appoint receivers where a defendant defaults on its payments to the plaintiff.  *See D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc., et al.*, 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008).

7

"Although a state statute may provide a vehicle for the appointment of a receiver, such a statute does not change the nature of the federal courts' equitable powers." *Ross v. Thomas*, Civ. No. 09 5631, 2011 WL 2207550 (S.D.N.Y. June 6, 2011) (quoting *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009)).  A federal court may invoke a New York state statute when appointing a receiver pursuant to Federal Rule of Civil Procedure 64, under which "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Fed. R. Civ. P. 64.

Federal common law and New York law have substantially similar standards on whether to grant a motion for the appointment of a receiver.  *D.B. Zwirn*, 550 F. Supp. 2d at 489. Accordingly, the Court need not conclusively determine whether state or federal law applies because "in practice the [federal and state] standards for appointment are likely to be essentially the same." *Id.* (citing *Ryan Beck & Co., Inc. v. Daly Holdings, Inc.*, No. 06 Civ. 5349, 2006 U.S. Dist. LEXIS 92001, 2006 WL 3775964, at *2 (S.D.N.Y. Dec. 19, 2006) (quoting Wright & Miller § 2983)).

"In the context of mortgage agreements, the Second Circuit Court of Appeals has affirmed the appointment of a receiver where the agreement provided that plaintiff may apply for such appointment upon the occurrence of any event of default, as defined therein." *D.B. Zwirn*, 550 F. Supp. 2d at 490-91.  Where it is undisputed that several events of default have occurred, the Second Circuit holds that such a provision "strongly supports the appointment of a receiver." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988)  ("It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default.").

8

Moreover, Second Circuit precedent provides for the appointment of a receiver. *See Nyland*, *supra*, (2d Cir. 1988).   In *Nyland*, the mortgagor was in monetary default.   The mortgagee accelerated the loan and moved for the appointment of a receiver, relying on a mortgage provision providing for the appointment of a receiver on default.   The Second Circuit upheld the District Court's appointment of a receiver, holding that a mortgage provision providing for the appointment of a receiver upon default "strongly supports the appointment of a receiver." *Id.* at 97.

Other federal courts in New York have similarly recognized the propriety of appointing a receiver, especially where, as here, the loan has been accelerated.  *See Federal Deposit Ins. Corp. v. Vernon Real Estate Invs., Ltd.*, 798 F. Supp. 1009, 1013 (S.D.N.Y. 1992).  The *Vernon* court made clear that, in such circumstances, "it is incumbent upon defendants to demonstrate why a receiver should not be appointed . . . and proof of necessity of a receiver is not required." *Id.* at 1012-13.

## B.      Intersection of Federal and State Law Favors Appointing a Receiver

A contractual right to the appointment of a receiver contained in a mortgage provides for the mortgagee to obtain the appointment of a receiver upon request.   Indeed, New York Real Property Law § 254(10) states:

> A covenant "that the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver," must be construed as meaning that the mortgagee, his heirs, successors or assigns, in any action to foreclose the mortgage, shall be entitled, without notice and without regard to adequacy of any security of the debt, to the appointment of a receiver of the rents and profits of the premises covered by the mortgage; and the rents and profits in the event of any default or defaults in paying the principal, interest, taxes, water rents, assessments or premiums of insurance, are assigned to the holder of the mortgage as further security for the payment of the indebtedness.

N.Y. Real Prop. Law § 254(10) (McKinney 2014).

Federal courts apply this statutory language.  For example, with respect to RPL 254(10),

the *D.B. Zwirn* Court stated:  "The existence of such language, presumably negotiated between

the parties, is a factor militating in plaintiff's favor and the party opposing the appointment bears

the burden of demonstrating why a receiver should not be appointed."  *D.B. Zwirn*, 550 F. Supp.

2d at 491.[3]

**Point II**

**THE UNDISPUTED FACTS SUPPORT APPOINTING A RECEIVER**

Borrower consented to the application of state law under the express terms of the

Mortgage, and specifically with respect to the provisions of RPL § 254.  Section 18.6 of the

Mortgage states:

> STATUTORY CONSTRUCTION. *The clauses and covenants contained in this Security Instrument that are construed by Section 254 of the New York Real Property Law shall be construed as provided in Section 254.* The additional clauses and covenants contained in this Security Instrument shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 and shall not impair, modify, alter or defeat such rights, notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254. … No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding. In the event of any inconsistencies between the provisions of Section 254 and the provisions of this

---

[3] New York Real Property Actions and Proceedings Law § 1325(1) states: "Where the action is for the foreclosure of a mortgage providing that a receiver may be appointed without notice, notice of a motion for such appointment should not be required." *Id.* (McKinney's 2014). Like *D.B. Zwirn*, the court in *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007) applied this law and allowed a receiver to be appointed *ex parte*. *Id.* ("the motion for the appointment of a receiver is made on notice, but an *ex parte* appointment is available if a contract between the parties calls for it.")

10

> Security Instrument, the provisions of the Security Instrument shall prevail.

(Exhibit B to Compl. at § 18.6, p 17.) (emphasis added); *see also D.B. Zwirn*, 550 F. Supp. 2d at 491.

In addition, Section 13 of the Mortgage states "GOVERNING LAW:   This Security Instrument shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located and the applicable laws of the United States of America." (*Id.* at § 13.1, p. 15.)

Here, the facts merit appointing a receiver for several reasons. First, Borrower expressly agreed to the *ex parte* appointment pursuant to the terms of the Mortgage and ALR.   Second, apart from the contractual provision, Plaintiff's collateral for the Loan is in "imminent danger of being lost, materially injured or diminished in value, or squandered," as the excess rents—which are Lender's collateral—are not being used to pay debt service.   Instead, these significant excess rents, which could be used to pay off the indebtedness, are subject to being diverted from the Property or otherwise wasted.   Indeed, despite these defaults, the Borrower's principals are living rent-free in one of the units, further diminishing the income form the Property.   (Lederman Decl. at ¶ 5 and Ex. 1 attached thereto.)

Third, appointing a receiver is warranted and absolutely necessary to preserve and protect the assets.   Without a receiver, Plaintiff will be effectively prohibited from enforcing its assignment of rents clause.   That is because Plaintiff cannot reasonably be expected to seek to collect the rents directly when doing so could impose on Plaintiff various liabilities as a mortgagee-in-possession.[4]

---

[4] *See Gasco Corp. & Gordian Group of Hong Kong, Inc. v. Tosco Props. Ltd.*, 653 N.Y.S.2d 687, 689-90 (2d Dep't 1997) (noting that mortgagee-in-possession collects rent in fiduciary capacity and may be liable for mismanagement or negligence); *see also Aetna Life Ins.*

Fourth, a receiver will allow for transparency and regular reporting, an integral aspect to maintaining the value of the Property. Right now, the Borrower does not comply with its reporting obligations owed to Lender, and, thus, the Borrower is the only one who knows what is happening at the Property. The appointment of a receiver would remedy this. Following the appointment of a receiver, the Borrower will still know what is occurring at the Property, via receiver reports to be periodically filed with the Court. Better yet, both the Court and the Lender will know as well.

Should the Court agree to grant this application, it is respectfully requested that the Court appoint GlassRatner Management & Realty Advisors, LLC ("**GlassRatner**") to serve as receiver and property manager. GlassRatner has active assignments at this time in both New York and New Jersey, and over the course of the past three years, has managed a total of 24 properties in those two states. GlassRatner is experienced managing mixed-use properties and both retail and multifamily properties, as well as office buildings. GlassRatner manages properties across the nation, currently manages approximately 135 commercial properties, and currently acts as a court-appointed receiver with respect to 35 assets. Over the past five years, GlassRatner has served as a court-appointed receiver in more than 210 cases. In order to act as receiver with respect to the Property, GlassRatner would charge a start-up fee of $2500.00 and then would charge a receivership / management fee equal to five percent (5.0%) of the Property's monthly gross income.

It is requested that an undertaking of $68,885.00 be required to be filed by the receiver, which amount is believed to be approximately the monthly gross income from the Property.

---

*Co. v. Avalon Orchards, Inc.*, 505 N.Y.S.2d 216, 218-19 (3d Dep't 1986) (noting that mortgagee-in-possession has duty to expend funds to preserve property and that action for waste may be brought against a mortgagee-in-possession).

12

## CONCLUSION

Borrower continues to collect the rents and profits from the Property, which is Lender's collateral and diminish the income by allowing its principals to live rent free, despite its non-payment of the amounts due and other defaults under the Loan Documents.  In order to protect the lien of Plaintiff's Mortgage and Plaintiff's interest in the Property and in the income derived therefrom, it is necessary that a receiver be appointed by the Court to collect rents and profits and to make necessary disbursements in connection with the maintenance of the Property. Accordingly, appointing a receiver to manage the Property during the pendency of this litigation is appropriate.

Dated:      New York, New York
            June 3, 2014

                              POLSINELLI PC


                        By: */s/  Jason A. Nagi*
                              Jason A. Nagi
                              900 Third Avenue, 21st Floor
                              New York, New York 10022
                              jnagi@polsinelli.com
                              (212) 644-2092
                              *Counsel for Plaintiff*

13

48066577